CHARLES S. NICHOLS, trustee, appellant.

Suffolk. May 31, 1892. — June 23, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Trust Fund — Investment by Trustee — Effect of Subsequent Acts of Cestui que Trust.*

It is an improper investment of a trust fund for the trustee to buy of himself with it a mortgage of real estate which is worth much less than the amount of the fund so invested; and the facts that subsequently the *cestui que trust* authorized the trustee to bid off the mortgaged property for him at a sale of the same, and took a conveyance of it, cannot avail the trustee, if the *cestui que trust* acted solely on the false representations of the trustee as to the value of the property, and, upon learning the truth, promptly demanded that he should take back the property and account for the sum invested in the mortgage.

APPEAL, by the trustee under the will of Isaac B. Woodbury, from a decree of the Probate Court, disallowing an item of $8,140 in his account. The case was submitted to this court, and, after an order affirming the decree of the Probate Court, to the full court, on appeal, upon agreed facts, in substance as follows.

On November 14, 1884, the appellant was the owner of a second mortgage of $5,000, subject to a previous mortgage of $4,000, upon a block of five wooden tenement houses on First Street, South Boston. On July 8, 1885, possession having been taken under the first mortgage, the appellant procured its release, and discharged his second mortgage and took instead thereof two mortgages to himself from the owner of the equity, one for $8,000 and one for $1,000; said mortgages were given by the latter to secure his notes of that date, and the $8,000 note was payable in six months from said July 8, 1885, with interest semiannually at the rate of seven per cent per annum. The appellant lent this money upon the report of one Clark, whom he had often employed to examine property for him, and who examined this estate and reported that the proposed loan was a safe one. Clark was then about seventy years of age, and had acted as an expert in such matters for the appellant and others, and as such had often examined real estate in Lynn, Salem, and

Boston for the purpose of ascertaining values. The appellant was appointed trustee under the will of Isaac B. Woodbury, on December 28, 1885, about six months after he had received the $8,000 mortgage in question. At the time he was appointed trustee, a part of the trust fund was invested in real estate, which he sold with the consent and co-operation of the *cestuis que trust.* On December 28, 1886, after the $8,000 note and mortgage had become due and payable, he assigned the mortgage and the note to one Ainsworth, who on the same date transferred them to the appellant as trustee under the will of Woodbury, the appellant paying therefor $8,000 from a portion of the proceeds of said real estate. The mortgage note was not indorsed by the appellant. At the time of this transfer no further examination was made of the property, and the taxes upon it for 1885 and 1886 were unpaid, and four at least of five houses had been sold for the tax of 1885 and the tax deeds recorded. The houses are of a cheap class and not in a good location, and before and ever since the mortgage was taken have been occupied, when occupied at all, by a very poor class of tenants, who have been continually changing, causing a large loss of rents and a great expenditure for repairs. At the time the mortgage was transferred to the appellant, the property was not fairly worth more than $5,200, and at no time since has it been worth more.

In the spring of 1888, the widow of Woodbury having died, and the trust, which was for her benefit, having terminated, and the heirs desiring to have the funds distributed, Charles P. Woodbury, one of the heirs, came to Boston in their behalf and talked with the appellant, among other things, about this mortgage and the mortgaged property. The appellant in this conversation told Woodbury that it was a first mortgage on a valuable piece of property rented for $1,200 per year, and that he had so much confidence in it he had lent of his own money $1,000 on a second mortgage of it; in consequence of which statement Woodbury did not go to see the property at all, but acted solely on the appellant's statement, which he reported to the other heirs, no one of whom had ever seen said property or known anything about it. After some correspondence between Woodbury and the appellant, in which the foreclosure of the mortgage was urged upon him, the appellant wrote that he had advertised the property to be

sold on April 30, 1888, and that he did not know whether or not he should be able to find a purchaser. On the back of said letter the following was written, and signed by all the heirs and beneficiaries of the trust fund, and sent to and duly received by the appellant: " In case the premises covered by mortgages to yourself as trustee do not find a purchaser at sale for more than enough to cover the amount of mortgages, interest, and charges, we hereby request you to bid them in for us."

At the sale, pursuant to that request, the appellant bid off the property in question for $7,500, that being the highest bid made for the heirs, and conveyed it to James Neilson, husband of one of the heirs, for their convenience and at their request. There was another bid at the auction of $7,000. After the foreclosure of the mortgage and the conveyance to Neilson, the property was left by him with the appellant for sale, and several letters passed between Nichols, Woodbury, and Neilson in regard to the disposal of it.

In consequence of a letter dated May 24, 1889, written by the appellant to him, Neilson immediately came to Boston, and for the first time saw and examined the property, no one of the heirs having up to that time seen it. He found no tenants therein, the houses having been vacated by order of the board of health, and the estates had been sold for taxes, and in the case of some of them the two years' right of redemption had expired. He called on the appellant for advice, and at his suggestion he procured releases from the holders of the tax titles, took the keys of the property, made contracts for repairs, and repaired the same, and tried through real estate agents to see if he could dispose of it without loss. Finding that he could not, in December, 1889, he demanded that the appellant should take back the property and pay the estate the $8,000 mortgage, with interest from the time of his last accounting, February 15, 1887, together with what Neilson had paid out for taxes and repairs upon the same. Various negotiations occurred between the respective parties with a view of disposing of the property without loss, and finally, on April 16, 1890, Neilson caused a quitclaim deed of the premises to be prepared and formally tendered to the appellant, and, on his refusal to accept the same, cited him into the Probate Court to account, and on or about that time endeavored to rent the

property to the best advantage, and employed one Bradbury as an agent to take charge of and rent the same. Since May, 1889, the property had been in the hands of an agent suggested by the appellant until the employment of Bradbury.

The appellant contends that he acted in good faith and in the exercise of a sound discretion; and that, even if the investment were an improvident one, the heirs of the testator, the beneficiaries of the trust, have by their acts approved it and taken the investment of the trustee and the mortgaged property into their own control, and relieved him from liability.

The appellees contend that the appellant should account for the $8,000, together with interest from the date of his former accounting, and the sums paid by them for repairs and taxes upon the property less what they have received in rents.

*D. O. Allen,* for the appellant.

*J. B. Lord,* for the appellees, was not called upon.

BARKER, J. It is enough to show that the original investment of the trust funds in the mortgage was improper, that it was a transaction by which the trustee bought of himself a mortgage upon property which, at the time, was worth several thousand dollars less than the amount of the fund which he so invested in the mortgage.

The acts of his *cestuis que trust* in authorizing the appellant to bid off the property for them, and in accepting a conveyance of it to one of them for the benefit of all, cannot avail the appellant, for the reason that the *cestuis que trust* acted solely on the false representations of the appellant as to the value of the property, and, upon finding the real state of the facts, promptly demanded that he should take back the property, and account for the sum invested in the mortgage.

*Decree affirmed.*